United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RODOLFO VALDEZ BECERRA,
Petitioner,
v.
SERGIO ALBARRAN, et al.,
Respondents.

Case No. 3:26-cv-12587-JSC

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. Nos. 3, 13

Before the Court is Petitioner's Motion for Temporary Restraining Order ("TRO"). (Dkt. No. 3.)[1] On October 27, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and a Motion for Temporary Restraining Order seeking his release from custody and to enjoin Respondents from re-detaining him absent prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 3.) The duty judge then filed an order prohibiting Petitioner's removal from the United States to preserve jurisdiction until the motion for a TRO could be heard. (Dkt. No. 5.) After careful consideration of the parties' written submissions, and with the benefit of oral argument on November 4, 2026, the Court granted the TRO and ordered Mr. Valdez Becerra released, with a written order to follow. (Dkt. No. 12.) At a further hearing on November 5, 2026, the parties represented the government had complied with the Order. This Order explains the Court's reasoning on the TRO motion and schedules next steps.

## BACKGROUND

### I. PETITIONER'S ALLEGATIONS

According to the record before the Court, Petitioner was detained by immigration

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

authorities in Arizona in 2018, was ordered removed from the United States to Mexico on June 26, 2018, and was in fact removed that same day. (Dkt. No. 1 ¶ 28.) Petitioner recalls "being detained by immigration authorities in Arizona, around 2019, for approximately 15 days and then returned to Mexico." (*Id.*) Petitioner returned to the United States around November 2021 and has lived in California ever since. (*Id.* ¶ 1, 23.) Petitioner currently lives with his partner and her three minor children in San Leandro. (*Id.* ¶ 24.) He "also has two children from a prior relationship, who were granted asylum in approximately 2003." (*Id.*) Petitioner "has worked consistently since her arrived [in the United States]" and "the family depends almost exclusively on Petitioner's income." (*Id.* ¶ 25.) Petitioner "is not aware of any criminal history anywhere in the world." (*Id.* ¶ 27.)

On October 27, 2026, Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") officers during a vehicle stop. (*Id.* ¶¶ 30, 33.) Petitioner was riding as a passenger in his cousin's van when the van was pulled over by an unmarked law enforcement vehicle in Hayward, California. (*Id.* ¶ 30.) Three officers "identified themselves only as police, said that it was a routine stop because they were looking for a person, and insisted that the occupants open the doors." (*Id.* ¶ 31.) The person the officers were looking for was not Petitioner. (*Id.* ¶ 32.) The officers did not produce documentation "showing that the officers had permission to stop the van" upon request. (*Id.* ¶ 31.) The officers then reached through the windows, unlocked the van's doors, and pulled Petitioner out of the van. (*Id.*) The officers "pushed Petitioner against the van and handcuffed his wrists behind his back" and then "put a chain around his wait and placed him in one of their vehicles." (*Id.* ¶ 33.) Petitioner complained about the handcuffs hurting him and the officers "told [him] to wait a bit" before they pulled over and re-adjusted the handcuffs. (Dkt. No. 3-2 ¶ 9.) Petitioner later learned that the officers were from ICE. (Dkt. No. 1 ¶ 33.)

The officers brought Petitioner to the ICE San Francisco Field Office. (*Id.* ¶ 35.) At that point, "a Deportation Officer issued [Petitioner] a Notice of Intent/Decision to Reinstate Prior Order (Form I-871)." (*Id.* ¶ 36.) In the acknowledgement section of the form, Petitioner signed the signature line as "Refused." (*Id.*) Later that same day, "a Supervisory Detention and

Deportation Officer signed the decision reinstating the 2018 order." (*Id.*) The same day, "the same Supervisory Detention and Deportation Officer signed a Warrant of Removal/Deportation (Form I-205)." (*Id.*) Petitioner was also served a "Warning to Alien Ordered Removed or Deported (Form I-294)," which "states that Petitioner was ordered removed 'by an immigration judge.'" (*Id.* ¶ 37.) Petitioner challenges the lawfulness of his detention. Petitioner is currently detained in California City, California. (Dkt. No. 8-1 ¶ 2.) He has also "expressed a fear of returning to Mexico and is awaiting a reasonable fear interview." (*Id.* ¶ 3.)

## II. PROCEDURAL HISTORY

On the same day ICE detained Petitioner, this Petition was filed. Also the same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel via email. (Dkt. No. 3-1 ¶ 7.) Respondents' counsel acknowledged receipt of the email. (*Id.*) Upon filing, Petitioner's counsel declared he would serve this motion and all supporting papers on Respondents' counsel. (*Id.* ¶ 8.)

The same day Petitioner filed his motion for a TRO and before the Court had issued an order, Respondents filed an opposition. (Dkt. No. 4.) The duty judge, Judge Lin, then filed an order that "[t]o preserve this Court's jurisdiction, Respondents SHALL NOT remove Petitioner from the United States during the pendency of this action, unless the Court orders otherwise" and ordering Respondents to provide Petitioner's counsel with his location by, at latest, October 28, 2026. (Dkt. No. 5.) Now pending before the Court is Petitioner's motion for a TRO, in which Petitioner requests the Court order Respondents (1) to immediately release Petitioner from custody; (2) to not re-detain Petitioner without a further order from this Court; (3) to keep Petitioner in this District during the pendency of this action; (4) to not remove Petitioner from the United States during the pendency of this action; (5) to provide the location of Petitioner; and (6) to show cause why a preliminary injunction should not issue.

## LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely

to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## DISCUSSION

## I. LIKELIHOOD OF SUCCESS ON THE MERITS

Petitioner brings claims under both the Fourth and Fifth Amendments. Petitioner has demonstrated a likelihood of success on the merits of his claim that his detention violates his procedural due process rights under the Fifth Amendment because, at the time the government detained Petitioner, it had no statutory authority for the detention.

### A. Fourth Amendment Unreasonable Seizure

The Fourth Amendment prohibits "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. A seizure "occurs when a law enforcement officer, through coercion, physical force[,] or a show of authority, in some way . . . communicated to a reasonable person that he was not at liberty to ignore the police presence to go about his business." *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (internal citations and quotation marks omitted).

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (internal citation omitted). And, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). But, probable cause is an objective, rather than subjective standard. *Devenpeck*, 543 U.S. at 152.

Here, there is no dispute that Petitioner was seized by the officers. (*See* Dkt. No. 3 at 10-11; Dkt. No. 4 at 7 (describing ICE as "arrest[ing] Petitioner").) Petitioner argues "[n]o officer had probable cause, or even reasonable suspicion, particularized to him" at the time they pulled him out of the van and detained him in handcuffs and a chain. (Dkt. No. 3 at 11.)

Even assuming Petitioner was seized without a warrant and without probable cause, release is not the appropriate remedy under these circumstances. "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.A. 1032, 1039 (1984); *see also United States v. Garcia-Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2006) ("In essence, the [*Lopez-Mendoza*] Court declined to hold that the consequences of an illegal arrest, search, or interrogation is to let the defendant go free because of the unlawfulness of the arrest, search, or interrogation."). "Instead, *Lopez–Mendoza* established that a defendant, including his identity, is properly before a court in a criminal or civil proceeding despite the initial illegal police action." *Garcia-Beltran*, 443 F.3d at 1132. "Thus, while the legality of [Petitioner's] initial arrest may be at issue in his removal proceedings, it does not provide this Court a basis for concluding that his current detention violates the INA or the Constitution." *Suraj v. Bondi*, No. 2:25-cv-02699-TMC, 2026 WL 507682, at *3 (W.D. Wash. Feb. 24, 2026); *see also Ramirez v. Acting Warden of the Adelanto Det. Ctr.*, No. EDCV 26-4806-AS, 2026 WL 2677300, at *3 (C.D. Cal. Sept. 9, 2026) ("Petitioner does not merit release based on his claim that he was arrested without a warrant or probable cause in violation of the Fourth

Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8(c)(2)(ii) . . . [since] [t]he remedy for unlawful arrest generally is the suppression of evidence obtained therefrom, not release from custody." (citations omitted)).

Petitioner argues these cases are about suppression, not about the "authority to hold [Petitioner] in custody they acquired unlawfully." (Dkt. No. 8 at 10.) However, the cases cited by Petitioner involve grounds for habeas relief other than a Fourth Amendment violation. *See, e.g., A.B.D. v. Wamsley*, No. 6:25-cv-02014-AA, 2026 WL 178306, at *8, 10-11 (D. Or. Jan. 22, 2026) (discussing unlawful arrest under Fourth Amendment only *after* "grant[ing] the writ of habeas corpus" under an analysis of 8 U.S.C. § 1225); *Richard E.N.B v. Easterwood*, No. 26-2972 (JWB/LIB), 2026 WL 3033824, at *2 (D. Minn. Oct. 9, 2026) (only analyzing "Statutory Arrest Authority," not Fourth Amendment unreasonable seizure).

So, even if there was a Fourth Amendment violation, it does not provide the Court with the grounds to order relief from detention under a writ of habeas corpus.[2]

**B. Procedural Due Process**

"[N]oncitizens 'who have established connections in this country [beyond merely entering the United States] have due process rights in deportation proceedings.'" *Chavarriaga Rojas v. Albarran*, 826 F. Supp. 3d 1155, 1165 (N.D. Cal. 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."); *Trump v. J.G.G.*, 604 U.S. 670, 675 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted

[2] The Court declines to specifically address whether, based on the limited record before it, the government violated the Fourth Amendment. The Court does note, however, "that although the lack of documentation or other admission of illegal presence may be some indication of illegal entry, it does not, without more, provide probable cause of the criminal violation of illegal entry." *Martinez-Medina v. Holder*, 673 F.3d 1029, 1035 (9th Cir. 2011).

justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions,* 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Singh v.* Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). These protections include, at a minimum, a statutory basis for detention at the time of detention. *See Thuraissigiam*, 591 U.S. at 139-140 (concluding even an alien who only "ma[de] it 25 yards into U.S. territory before he was caught" is entitled to "those rights regarding admission that Congress has provided by statute"); *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. '[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception.' Civil detention violates due process outside of 'certain special and narrow nonpunitive circumstances.'" (quoting *United States v. Saleno*, 481 U.S. 739, 755 (1987); *Zadvydas*, 533 U.S. at 690)). Accordingly, the Courts considers the possible statutory bases for Petitioner's initial detention on the morning of October 27, 2026.

**1. Detention Under Section 1231**

The first question is whether Petitioner's detention is authorized by Section 8 U.S.C. 1231(a), which "applies to detention after the entry of a final removal order." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023). Specifically, the statute "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." *Id.* at 531 (citing 8 U.S.C. § 1231(a)(1)-(2)). During the removal period, detention is mandatory. 8 U.S.C.A. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("[T]he Government generally must secure the noncitizen's removal during [the] 90-day 'removal period'" and "the Government 'shall' detain noncitizens during [this] statutory removal period.") (quoting 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)).

Section 1231(a)(5) addresses the "Reinstatement of removal orders against aliens illegally reentering":

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

United States District Court
Northern District of California

8 U.S.C. 1231(a)(5). "In short [to reinstate an order of removal], the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the order." *Johnson v. Guzman Chavez*, 594 U.S. 523, 530 (2021); *see also* 8 C.F.R. § 241.8 (implementing regulation of section 1231). "Simply put, under DHS regulations, an alien subject to a reinstated order of removal has no right to a hearing but is entitled to written notice and the right to contest the applicability of § 241.8(a)." *Garcia Nambo v. Albarran*, No. 26-cv-11838-BLF, 2026 WL 3270015, at *2 (N.D. Cal. Oct. 30, 2026) "[A] reinstated removal order is administratively final." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017). But 1231(a)(5) does not "preclude an alien from pursuing withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Johnson*, 594 U.S. at 530.

As a threshold matter, the parties agree a section 1231 reinstatement, if validly completed prior to detention, would be sufficient grounds to detain Petitioner. (*See* Dkt. No. 3 at 9 ("Petitioner does not challenge that [2018] order or its reinstatement."); Dkt. No. 4 at 7 ("Petitioner has a final order of removal, which was reinstated by [DHS] . . . . Therefore, he is subject to mandatory detention.").)[3]

Petitioner argues, however, that because "ICE arrested Petitioner first and reinstated his order only afterward," section 1231 did not "authorize[] the custody" when it began. (Dkt. No. 3 at 9-10.) Respondents counter "[a] warrant was not required to arrest Petitioner to reinstate a removal order." (Dkt. No. 4 at 12.) Respondents point to a Department of Homeland Security field manual, which states "Aliens taken into custody pursuant to this section are detained as warrantless arrests in accordance with section 287.2 of the INA. No Warrant of Arrest (Form I-200) is required . . . . The previously executed Warrant of Removal, Form I-205, serves as

---

[3] Respondents' opposition states Petitioner's order of removal was reinstated "on October 2, 2026," which was over three weeks before Petitioner was detained. (Dkt. No. 4 at 7.) However, the I-871 form reinstating Petitioner's removal order was completed on October 27, 2026, (Dkt. No. 4-1 at 2), and Respondents do not otherwise reference October 2. Therefore, the Court assumes the reference to October 2, 2026 was in error and the relevant reinstatement occurred on October 27, 2026.

authority to detain such aliens." (*Id.* (quoting U.S. Dep't of Homeland Sec. Immigr. & Customs Enf't Off. of Det. & Removal, Detention and Deportation Officers' Field Manual, Ch. 14.8 Reinstatement of Final Orders (Mar. 27, 2006), 2014 WL 7151908).) In short, the parties dispute whether a new I-205 must be issued before mandatory detention is authorized under section 1231(a)(5).

The Court concludes the government must complete reinstatement of the removal order *prior* to relying on section 1231 as the basis for detention. First, both the language of the statute and its implementing regulations require "find[ings]" from the Attorney General or "determine[ations]" from an immigration officer before the order of removal is reinstated. *See* 8 U.S.C. 1231(a)(5); 8 C.F.R. § 241.8(a). Such findings or determinations seem unlikely to occur in the brief moments between the discovery that someone, like Petitioner, is present in the United States and his detention by the same law enforcement officers who made the discovery. Second, the requirement that reinstatement come before detention is contemplated by the Supreme Court's logic in *Johnson v. Guzman Chavez* under which the government must complete several steps *before* it "reinstates the order." *See Johnson*, 594 U.S. at 530; *see also Garcia Nambo*, 2026 WL 3270015, at *2 ("Detention follows reinstatement. Not the other way around. The Supreme Court has made this clear."); *Cartagena Jaco v. Blanche*, 26-CV-04798 (JPO), 2026 WL 1786007, at *4 (S.D.N.Y. June 22, 2026) ("The fact that no reinstatement had been issued before Petitioner's arrest renders the purported basis for his arrest and detention invalid."); *Reyes ex rel. Sanchez Ocotlan v. U.S. Immigr. & Customs Enf't*, No. 26-CV-7515 (JPO), 2026 WL 2754829, at *1 (S.D.N.Y. Sept. 17, 2026) (same); *De La Rosa Izaguirre v. Blanche*, 26-CV-2911 (PKC), 2026 WL 2023200, at *11 (E.D.N.Y. July 13, 2026) ("[T]he proper established procedure is for the government to reinstate an order of removal and *then* issue a Form I-205 arrest warrant to carry out removal . . . . until the I-871 process was complete, Section 1231(a) could not justify an arrest pursuant to a Form I-205 warrant."); *Martin v. Joyce*, 26 Civ. 4699 (AT), 2026 WL 2199777, at *4 (S.D.N.Y. July 30, 2026) ("In sum, the regulations require that an immigration officer make a determination that § 1231 applies to a noncitizen before or even at the time of detention." (cleaned up)); *DiGrado v. Ashcroft*, 67 Fed. Appx. 634, 635 (2nd Cir. 2003) ("[S]ince Appellant's prior

removal order has not been reinstated, see 8 U.S.C. § 1231(a)(5), he is not now under a final order of removal.”).

Many of the cases Respondents cite are inapposite because they involved indisputably reinstated orders of removal. *See, e.g.*, *Arreaga Santizo v. Warden of Golden State Annex*, No. 1:26-cv-04256 (VC), 2026 WL 1803596, at * 2 (E.D. Cal. June 23, 2026) (“Both Respondents and Petitioner here seem to agree that he is subject to a reinstated order of removal.”); *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *1 (N.D. Cal. Aug. 21, 2025) (uncontested that removal order was reinstated); *Yoc Puluc v. Warden, Golden State Annex Det. Facility*, No. 1:26-cv-04531-DAD-CSK (HC), 2026 WL 1863247, at *1 (E.D. Cal. June 29, 2026) (same). Respondent also relies on *Gaytan v. Chestnut*, No. 26-cv-4465, 2026 WL 1954501 (E.D. Cal. July 6, 2026), in which the petitioner was detained seemingly prior to the reinstatement of her prior order of removal. *Id.* at *1. However, in *Gaytan*, “Petitioner [did] not address this reinstated order of removal in her Petition” and instead attacked the validity of her original removal order. *Id.* at *3. Thus, the court did not examine whether the petitioner’s warrant was reinstated prior or subsequently to her arrest. *See id.*

Finally, contrary to Respondents’ assertions, the Department of Homeland Security field manual does not provide support for Petitioner’s warrantless detention under section 1231. The relevant portion states “Aliens taken into custody pursuant to this section are detained as warrantless arrests in accordance with section 287.2 of the INA.” Detention and Deportation Officers’ Field Manual, Ch. 14.8 Reinstatement of Final Orders (Mar. 27, 2006), 2014 WL 7151908. However, “287.2 of the INA” corresponds to 8 U.S.C. § 1357, the statute covering warrantless arrests. *See Immigration and Nationality Act*, U.S. CITIZENSHIP & IMMIGR. SERVS., https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act. And, as discussed below, section 1357 has unique requirements that were not met at the time of Petitioner’s detention. So, as the field manual permits detention in accordance with section 1357, and, as explained below, section 1357 did not permit Petitioner’s detention, the field manual does

not permit the detention.[4]

**2. Detention Under Section 1357**

Under 8 U.S.C. § 1357, authorized immigration officials can "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* C.F.R. § 287.8(c)(2)(iii) (implementing regulations). Both section 1357 and its implementing regulations "require two determinations: (1) unlawful presence and (2) likelihood of escape." *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *20 (C.D. Cal. Sept. 2, 2026); *see also Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) (requiring two findings). The government cannot "eliminate[] the likelihood of escape analysis altogether by permitting a finding of likely to escape based solely on unlawful status." *Vasquez Perdomo*, 2026 WL 2751388, at *20.

Here, as confirmed during the hearing, Respondents do not rely on section 1357 as a basis for Petitioner's detention. (*See* Dkt. No. 4 (Respondents' opposition); Dkt. No. 8 at 8 at 9 (Petitioner's characterization that "Respondents do not argue that either requirement of [section 1357] was met; they argue only that no warrant was needed."). And, on the record before the Court, there is no support for a reasonable belief Petitioner was "likely to escape before a warrant [could] be obtained for his arrest." *See Mountain High Knitting*, 51 F.3d at 218 (concluding "the plain language of 8 U.S.C. § 1357(a)(2) . . . foreclose[ed] the possibility of a permissible civil arrest under circumstances" in which workers were detained after not possessing proper immigration documentation but "INS did not allege nor do appellants concede the existence of grounds for a reasonable belief that they were particularly likely to escape").

So, at the time the government detained Petitioner, it had no lawful basis to do so, either under section 1231 or under section 1357.

---

[4] Aside from the sequencing of the reinstatement, Petitioner argues the reinstated removal order is also invalid because "Petitioner was [not] given any meaningful opportunity to contest the determination" in contravention of the agency's regulations. (Dkt. No. 8 at 8.) However, the limited record before the Court does not show that Respondents failed to comply with 8 C.F.R. § 241.8, the implementing regulation of section 1231.



United States District Court
Northern District of California

United States District Court
Northern District of California

**3. Remedy**

While Petitioner was initially detained without proper authority under section 1231 or section 1357, there remains the question of whether, given the subsequent reinstatement of the order of removal—which carries a requirement of mandatory detention—release is the appropriate remedy. Respondents argue "[e]ven assuming that Petitioner's arrest was unlawful because the warrant was issued shortly after the arrest, he is not entitled to habeas relief" and that the only available remedy is suppression of evidence. (Dkt. No. 4 at 14.)

"The typical remedy for [unlawful executive] detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008).

As another district court concluded when assessing a similar situation in which a noncitizen was detained without authority, albeit under 8 U.S.C. § 1225, but would later be covered by a mandatory detention authority:

> Reading § 1225 to sustain Petitioner's current detention despite an unauthorized arrest under § 1357 would substantially diminish the limits Congress placed on warrantless arrests. Section 1357 permits such an arrest only when its specified conditions are met. Yet under Respondents' reading, ICE could arrest a noncitizen and even wholly ignore § 1357's conditions, conduct the § 1225 inspection made possible by that arrest, and then continue the same custody because § 1225 requires detention. But ICE identifies no statutory authority permitting it to bypass § 1357's conditions when making a warrantless arrest . . . . The statutory text provides no basis for treating the post-arrest detention directive as an independent authorization for custody obtained through an arrest Congress expressly limited in § 1357.

*Richard E.N.B.*, 2026 WL 3033824, at *5-6. And at least some courts have concluded that when a petitioner's "arrest was neither supported by a valid warrant nor lawful under 8 U.S.C. § 1357(a)(2)[,] [t]he arrest was invalid *ab initio* and the proper remedy is release from detention." *Gumaneh v. Hernandez*, No. C26-2767-BAT, 2026 WL 2624291, at *4 (W.D. Wash. Sept. 4, 2026); *Escobar Nerio v. Blanche*, No. 2:26-cv-02010-MMD-NJK, 2026 WL 2983494, at *4 (D. Nev. Oct. 5, 2026) (same); *De La Rosa Izaguirre*, 2026 WL 2023200, at *14 ("Seeing as Respondents were not authorized to arrest Petitioner in the first place, but Petitioner has nonetheless spent nearly two months detained, release is appropriate here."); *cf. Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590 (C.D. Cal. Sept. 12, 2025) ("Providing

Petitioner an interview *ex post* facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court therefore considers release an appropriate remedy. Doing so returns Petitioner to "the moment prior to Petitioner's likely illegal detention," which is the "last uncontested status [preceding] the pending controversy." *Ramirez Cardona v. Albarran*, No. 26-cv-12223, 2026 WL 3151305 (N.D. Cal. Oct. 20, 2026) (cleaned up). "A holding to the contrary would reward the government for completing, after the fact and after litigation commences, the very procedures it was required to follow before making an arrest." *Cartagena Jaco*, 2026 WL 1786007, at *4.

## II. IRREPARABLE INJURY

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a lawful basis is "likely unconstitutional" that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

## III. BALANCE OF THE EQUITIES AND PUBLIC INTEREST

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been



United States District Court
Northern District of California

violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately reinstates Petitioner's final order of removal. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).

## IV. JURISDICTION

Regardless of the *Winter* factors, the government contends the Court lacks jurisdiction—under both 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9)—to enjoin respondents from removing

Petitioner from the United States. (Dkt. No. 4 at 19.)

First, the section 1252(g) "argument is a non-starter." *Saeteun v. Albarran*, No. 26-CV-04743-CRB, 2026 WL 1454304, at *2 (N.D. Cal. May 22, 2026). Habeas petitions in which petitioners make "statutory and constitutional challenges to post-removal-period detention" are not challenges to the Attorney General's discretion. *Zadvydas*, 533 U.S. at 688; *see also Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) ("[W]e have been clear that § 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders"). "Petitioner does not seek relief from this Court from a decision to execute a removal order . . . [and instead] challenges solely the propriety of his detention, not the core proceedings involved in his removal." *Sipaseuth v. Becerra*, No. 26-CV-07942-BLF, 2026 WL 2521847, at *4 (N.D. Cal. Aug. 26, 2026) (quoting *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *2 (S.D. Cal. Oct. 22, 2025)). The Court has jurisdiction to hear Petitioner's challenge to his detention.

Second, 8 U.S.C. § 1252(b)(9), entitled "[c]onsolidation of questions for judicial review" states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). These judicial review provisions "were designed to make perfectly clear 'that only courts of appeals—and not district courts—could review a final removal order,' that 'review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding,' and that the statute was 'intended to preclude all district court review of any issue raised in a removal proceeding.'" *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1034 (9th Cir. 2016) (quoting H.R. Rep. No. 109–72, at 173). These provisions do not prohibit "the ability of a court to review claims that are independent of challenges to removal orders." *Martinez v. Napolitano*, 704

F.3d 620, 622 (9th Cir. 2012) (internal citation and quotation marks omitted); *see also Singh*, 638 F.3d at 1211 ("Congress has clarified . . . that the REAL ID Act was not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders.") (citing H.R. Rep. No. 109–72, at 175). Here, because Petitioner "does not challenge [his 2018 removal] order or its reinstatement," either directly or indirectly, his claim does not fall within Section 1252(b)(9)'s jurisdiction-stripping provision.

So, the Court has jurisdiction to hear constitutional challenges to Petitioner's detention and order relief necessary to preserve the status quo.

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo and Respondents are ORDERED to release Petitioner immediately from Respondents' custody.

(2) Discovery related to the reinstatement of the removal order (for detention purposes only) is open. The Court will hold a preliminary injunction hearing at 10:00 a.m. on November 19, 2026. If either side has evidence they want the Court to consider, it shall be submitted by noon on November 18, 2026. If after discovery Petitioner determines he does not have a good faith argument as to the validity of the reinstated removal order for detention purposes, he shall advise the government and the Court.

This Order disposes of Docket Nos. 3, 13.

**IT IS SO ORDERED.**

Dated: November 5, 2026

JACQUELINE SCOTT CORLEY
United States District Judge